UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

YVONNE HARMON                                                                    PLAINTIFF

VERSUS                                            CIVIL ACTION NO. 3:23CV195-HTW-RPM

COMMISSIONER OF SOCIAL SECURITY                                          DEFENDANT

## REPORT AND RECOMMENDATION

Yvonne Harmon filed the instant appeal from the Commissioner of Social Security's

denial of her claim for disability benefits under the Social Security Act.  Harmon filed her

original application for disability benefits on April 27, 2021, alleging a disability onset date of

March 1, 2021, because of seizures, bipolar disorder, asthma, anxiety, vision problems, epilepsy,

OCD, and carpal tunnel syndrome.  Doc. [8] at 143, 168.  She was 40 years old at the alleged

onset date, with a high school education, and past relevant work as a store manager and cashier

checker.  *Id.* at 169.  Her application for disability benefits was denied initially and on

reconsideration.  *Id.* at 77-93.  Harmon then requested and was granted a hearing before an

Administrative Law Judge (ALJ).  *Id.* at 42-76, 105-06.

The ALJ conducted a hearing and entered a decision on September 26, 2022, finding

Harmon not disabled.  *Id.* at 21-38.  In the decision, the ALJ found Harmon had not engaged in

substantial gainful activity since the alleged onset date of March 1, 2021.  *Id.* at 23.  The ALJ

also found that Harmon suffered from severe impairments of cervical and lumbar degenerative

disc disease, obesity, seizure disorder, asthma, bipolar disorder, and anxiety and/or post-

traumatic stress disorder.  *Ibid.*  However, the ALJ determined that Harmon did not have an

impairment or combination of impairments that qualified under the Listings in the Social

Security Regulations.  *Id.* at 24-26.  Despite her impairments, the ALJ found Harmon maintained

the residual functional capacity (RFC) to perform light work, except she can stand and walk no more than four hours in an eight hour workday; she should not be required to climb ladders, ropes or scaffolds and should only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs; she can perform only occasional overhead reaching with the non-dominant upper extremity; she should avoid frequent exposure to extreme cold, pulmonary irritants including fumes, odors, dusts, gases, and poor ventilation; she should avoid more than occasional exposure to hazards including moving machinery and unprotected heights; she should not be required to drive as part of her work duties; she is capable of understanding, remembering, and carrying out simple (but not detailed or complex) instructions; she should have no more than occasional interaction with the public and coworkers; and she is capable of dealing with occasional, but not frequent, changes in the routine work setting.  *Id.* at 26-36.  Relying in part on the testimony of a vocational expert, the ALJ determined that Harmon is not capable of returning to her past relevant work as a retail store manager or cashier checker.  However, the ALJ found Harmon can perform other jobs that exist in significant numbers in the national economy.  Specifically, the ALJ identified the jobs of router, marker, and small products assembler.  *Id.* at 37-38. Accordingly, the ALJ concluded that Harmon is not disabled as defined by the Social Security Act.  *Id.* at 38.  The Appeals Council denied Harmon's motion for review.  *Id.* at 4-8.  She then filed the instant lawsuit.

In her memorandum brief, Harmon argues the ALJ erred by failing to properly consider the medical opinions of Stanley Hartness, MD; Corlis Oliver, MD; and Glenn James, MD.  Doc. [13].  With respect to Dr. Hartness, she argues the ALJ's persuasiveness analysis was inadequate as it relates to his opinion that Harmon should never reach overhead or forward bilaterally.  *Id.* at 4-8.  With respect to the agency physicians, Dr. Oliver and Dr. James, Harmon argues their

opinions were made without the benefit of material medical evidence and therefore the ALJ's reliance on their opinions is not supported by substantial evidence. *Id.* at 8-11. Specifically, Harmon argues the agency physicians rendered their opinions prior to a cervical MRI performed on December 17, 2021.

## Law and Analysis

### Standard of Review

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision is supported by substantial evidence, then the findings are conclusive; and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are

within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work. *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he cannot perform this alternative employment. *Id.*

Harmon filed her application for disability benefits on April 27, 2021. For any application filed "on or after March 27, 2017," 20 C.F.R. § 404.1520c applies. Under these more recent social security regulations, an ALJ is required to "explain" his or her persuasiveness finding insofar as "consistency" and "supportability" are concerned. 20 C.F.R. § 404.1520c; 20 C.F.R. § 416.920c. Pursuant to 20 C.F.R. § 404.1520c, the ALJ "will not defer or give any

4

specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)".  In other words, ALJs are no longer required to give controlling weight to the opinions of treating physicians.  However, before an ALJ may discount or reject an opinion, he or she must "articulate in [the] determination or decision how persuasive [the ALJ] find[s] all of the medical opinions ... in [the claimant's] case record."  20 § 404.1520c(b); *see Moore v. Saul*, No. 3:20-CV-48-DPJ-MTP, 2021 WL 754833, at \*3 (S.D.Miss. Feb. 26, 2021).  In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1520c(c).  The most important factors in evaluating persuasiveness are supportability and consistency.  20 C.F.R. 404.1520c(b)(2).

Whether the ALJ properly evaluated medical opinions and whether substantial evidence supports an RFC determination are legally distinct issues.  Under the social security regulations, an ALJ is required to "explain" his persuasiveness finding insofar as "consistency" and "supportability" are concerned. 20 C.F.R. § 404.1520c; 20 C.F.R. § 416.920c.  If the Court cannot determine the ALJ's reasons for finding a given medical opinion to be persuasive in the first instance, the Court cannot determine whether that finding is supported by substantial evidence.  *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at \*11 (W.D.Tenn. July 20, 2021).  In short, the question of whether an ALJ provided an adequate discussion to allow for meaningful judicial review is a threshold question that is addressed before reaching the issue of substantial evidence.  *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-RPM, 2021 WL 4221620, at \*6-\*7 (S.D.Miss. Sept. 15, 2021).

The undersigned finds that the ALJ provided adequate discussion of Dr. Hartness' opinion for meaningful judicial review. The ALJ gave a lengthy recitation of Dr. Hartness' one-time consultative examination findings, including findings related to Harmon's shoulders and upper extremities. Doc. [8] at 30-31. Dr. Hartness opined that Harmon should never reach overhead or forward bilaterally. *Id.* at 372. As justification for this limitation, Dr. Hartness cited to Harmon's history of bilateral rotator cuff tears and decreased range of motion in the shoulders. *Ibid.* By contrast, the ALJ found that Harmon should be limited to performing only occasional overhead reaching with the non-dominant (left) upper extremity. *Id.* at 26.

The ALJ found Dr. Hartness' limitations on bilateral reaching were not persuasive and pointed to apparent inconsistencies between the objective medical evidence and Dr. Hartness' findings. Specifically, the ALJ cited to a December 2020 MRI of the left shoulder, which reported "[n]o definite evidence of a tear is demonstrated in the rotator cuff tendon." *Id.* at 256. The ALJ also noted that Dr. Hartness' exam was "negative for Tinel's and Phalen's signs bilaterally with no atrophy noted and only slightly decreased muscle strength at 4/5 in the bilateral upper extremities." *Id.* at 35-36. The ALJ's explanation is "not profound" but it does "more than pay lip service to the regulation" and adequately "articulate[s] [her] reasoning under the required factors." *Edwards v. Kijakazi*, No. 1:20-CV-292, 2023 WL 2242317, at *3 (S.D. Miss. Feb. 27, 2023) (quoting *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166, 2021 WL 3708047, at *3 (S.D. Miss. Aug. 11, 2021)). Accordingly, the persuasiveness analysis is sufficient for judicial review.

Harmon fails to explain how the ALJ's rejection of Dr. Hartness' limitations on reaching resulted in prejudice. She argues in conclusory fashion that the jobs identified by the vocational expert require some form of reaching. Doc. [13] at 5. "The party seeking to overturn the

Commissioner's decision has the burden to show that prejudice resulted from an error." *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012). The RFC is what an individual can still do despite his limitations. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *2 (SSA July 2, 1996). The RFC determination is "the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

Substantial evidence supports the ALJ's RFC limitation to occasional overhead reaching with the left upper extremity. Dr. Oliver, a state agency medical consultant, opined Harmon is unlimited in her ability to reach in front and/or laterally but should only occasionally reach overhead with her left arm based on a left shoulder rotator cuff tear. Doc. [8] at 82. Dr. Glenn James, another agency physician, affirmed these findings on reconsideration. *Id.* at 89-90. The opinions of Dr. Oliver and Dr. James align with the ALJ's RFC assessment. For there to be a finding of no substantial evidence, there must be a conspicuous absence of credible choices or no contrary medical evidence. *See Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). Here, the medical record presents a credible choice regarding limitations on Harmon's ability to reach.

The ALJ found the opinions of Dr. Oliver and Dr. James to be "generally persuasive" and relied upon them in part in formulating Harmon's RFC. Doc. [8] at 36. Harmon argues the ALJ erred in her assessment of these agency physicians' opinions. As the sole basis of her contention, Harmon asserts the opinions of Dr. Oliver and Dr. James were made without the benefit of material medical evidence in the form of a December 17, 2021, cervical MRI.

The MRI in question revealed protrusions at C5/6 and C6/7.  *Id.* at 526.  Although the MRI report post-dated the agency physicians' opinions, Harmon fails to explain how the MRI report undermines their findings with respect to reaching or exertional limitations.  The ALJ considered the later medical evidence in her decision.  *Id.* at 31.  In fact, the ALJ found Harmon suffered from a severe impairment of cervical degenerative disc disease.  *Id.* at 23.  As noted by the ALJ, the medical records indicate that Harmon received a cervical epidural steroid injection in January 2022 that provided significant lasting relief until May 2022.  *Id.* at 28, 34.  Furthermore, on June 23, 2022, Plaintiff rated her pain as level 2 of 10 and reported she would like to repeat the cervical epidural steroid injection if possible because she had 100% relief that lasted several months following the previous injection.  *Ibid.*  Harmon does not explain what additional limitations should have been assigned in the RFC based on the cervical condition revealed by the MRI.  Moreover, Dr. Hartness assigned limitations in Harmon's ability to reach based on bilateral rotator cuff injuries.  *Id.* at 372.  He did not diagnose a neck impairment in his consultative examination report.  Thus, it does not appear that reaching limitations assigned by Dr. Hartness were predicated on Harmon's neck impairment.  Harmon's attempt to link the later medical evidence to Dr. Hartness' opinion on reaching limitations is misguided.

Harmon next argues the ALJ erred when she made a "baseless dismissal of Dr. James' sedentary RFC that was further made without the benefit of material medical evidence of Plaintiff's cervical MRI."  Doc. [13] at 10.  Harmon devotes a single sentence to this assertion and otherwise fails to develop the argument.  As addressed above, the ALJ considered the subsequent cervical MRI report.  Harmon fails to explain how the MRI findings support greater exertional limitations than those already assigned by the ALJ.

The ALJ specifically addressed Dr. James' opinion and noted that he affirmed the initial-level findings of Dr. Oliver.  Doc. [8] at 36.  In turn, Dr. Oliver had found Harmon capable of performing a range of light work with certain additional limitations.  The ALJ rejected Dr. James' contrary sedentary finding as not supported by the record as a whole.  *Ibid.*  The ALJ considered Dr. James' reference to sedentary exertional limitations and noted this finding was made "perhaps considering the limited standing and walking in Dr. Oliver's opinion."  *Ibid.* However, Dr. Oliver also opined that Harmon could occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to 10 pounds—which aligns with the definition of light work under the Social Security Regulations.  *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").  Dr. Hartness likewise opined that Harmon could lift 20 pounds occasionally and 10 pounds frequently.  Doc. [8] at 372.  Although the ALJ rejected Dr. Hartness' reaching limitations as unpersuasive, she adopted his opinion as to Harmon's exertional limitations.  The opinions of Dr. Oliver and Dr. Hartness constitute substantial evidence supporting the ALJ's finding that Harmon is capable of light work.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the

District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 6th day of August 2024.


/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE